IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SARAA AL-HAGE HAMMOUD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-706 (LMB/IDD) |
| ) | |
| JOSHUA COLBORN, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Before the Court is a Renewed Motion for Summary Judgment ("Motion") [Dkt. No. 40] filed by defendant Joshua Colborn ("Colborn" or "defendant") in this 42 U.S.C. § 1983 action initiated by pro se plaintiff Saraa Al-Hage Hammoud ("Hammoud" or "plaintiff"). The Complaint alleges that defendant used excessive force against plaintiff when he arrested her for public intoxication. [Dkt. No. 1-1]. Defendant contests this allegation and has submitted transcript and video evidence in support of his argument that his actions were objectively reasonable under the circumstances. See [Dkt. No. 41]. Plaintiff has filed an opposition to the Motion [Dkt. No. 48], and defendant has waived any response [Dkt. No. 49]. Defendant's Motion is therefore ripe for consideration and, for the reasons that follow, will be granted.[1]

I. BACKGROUND

A. **Evidence Considered in Compilation of Statement of Undisputed Facts**

The information listed in the statement of undisputed facts derives primarily from the Loudoun County General District Court's trial transcript submitted by both parties and plaintiff's deposition submitted by defendant. [Dkt. No. 41] at 1-6. The Court has also considered every

---

[1] Oral argument has been waived and the Court finds that it would not aid the decisional process.

other item of admissible evidence that the parties have filed in support of their positions. For defendant, the evidence includes plaintiff's deposition, the Loudoun County General District Court's trial transcript, patrol cruiser and dash camera footage, body camera footage,[2] and final dispositions of plaintiff's charges in state general district and circuit court. [Dkt. No. 41]. For plaintiff, the evidence includes her sworn statement, the same patrol cruiser footage, trial transcript, and final dispositions of the charges in state circuit court. [Dkt. No. 48]. Plaintiff also provides a hospital report and photographs of her injuries. Id.

B. **Statement of Undisputed Facts**

The following facts are not in dispute, except where indicated by footnotes. At all relevant times defendant was employed by the Loudoun County Sheriff's Office as a Deputy Sheriff. [Dkt. Nos. 41-2, 48-2] at 7-8.

On the night of April 8, 2018, plaintiff was at her boyfriend Michael's apartment where he lived with his father in Sterling, Virginia. [Dkt. No. 41-1] at 10-11. While there, plaintiff had a "little bit" of wine with Michael and his father. Id. at 13. At around 3:00 a.m., plaintiff found an earring in Michael's bathroom, which led her to suspect that he was cheating. Id. at 12. Hammoud became very upset, told Michael that she "had enough," and informed him that she was leaving. Id. Because Michael had plaintiff's car keys, she left the apartment and stood outside of the complex while trying to arrange for an Uber to pick her up. Id. at 12-14. When Michael came outside to look for her, plaintiff called 911. Id. at 15-16. While the two were outside, Hammoud "was yelling" and Michael was "very well-composed and quiet." Id. at 17.

---

[2] The only body camera footage in the record is from Officer Karrisch, an officer at the scene. [Dkt. No. 41-5]. Unfortunately, Officer Karrisch's body camera footage does not show defendant's arrest of plaintiff; rather, the video shows Officer Karrisch speaking with plaintiff's boyfriend, Michael, while plaintiff is heard yelling in the background.

2

Defendant and Sgt. Chad Braun were dispatched to the apartment complex after being informed that "a couple of subjects were out in the street arguing." [Dkt. Nos. 41-2, 48-2] at 8-9, 19. Upon arrival, the officers spoke with Hammoud and Michael who were arguing in the road. Id. at 9, 29-30.[3] Plaintiff told defendant that Michael would not give her the keys to her car, while Michael explained that he did not want Hammoud to drive because she was drunk. [Dkt. No. 41-1] at 17-18. During this conversation, Colborn detected a "slight smell of alcohol" coming from plaintiff. [Dkt. Nos. 41-2, 48-2] at 10, 23. When he asked plaintiff whether she had been drinking that night, she responded that she had drunk "some wine." [Dkt. Nos. 41-2, 48-2] at 10.

Colborn told plaintiff that she needed to get an Uber and go home. She responded that there were no Ubers in the area. [Dkt. Nos. 41-2, 48-2] at 10, 22-23, 32; [Dkt. No. 41-1] at 18-19. When Colborn asked Hammoud for her identification, she said that she did not have any identification. [Dkt. Nos. 41-2, 48-2] at 10-11, 32. Colborn asked plaintiff for her name, but she mumbled something that he could not understand. Id. at 10-11. Colborn then asked plaintiff to spell her name, but she said she could not. Id. at 10-11, 32. Throughout Hammoud's interaction with Colborn, her demeanor changed from agitated and aggressive to upset and emotional, and she continuously argued about why she had to leave. Id. Plaintiff admits that she was "definitely emotional" when talking to defendant. [Dkt. No. 41-1] at 18-19. Colborn observed plaintiff yelling at Michael, and he noticed she had blood shot eyes and appeared unsteady on her feet. [Dkt. Nos. 41-2, 48-2] at 9-11, 23-24, 31-32.

---

[3] The parties dispute whether defendant spoke to plaintiff or Michael first. [Dkt. Nos. 41-2, 48-2] at 9-10; [Dkt. No. 41-1] at 17-18.

3

Defendant repeatedly told Hammoud that she needed to get an Uber and go home, or he would have to take her to jail to which she responded that "she [was] not going to jail." [Dkt. No. 41-1] at 17-20, 20, 22-24, 29. At this point, defendant believed plaintiff to be under the influence of alcohol and informed her that he was placing her under arrest for public intoxication. [Dkt. Nos. 41-2, 48-2] at 11, 23, 32.

Colborn put his hand on plaintiff's arm and told her to place her hands behind her back. [Dkt. Nos. 41-2, 48-2] at 11-12, 26, 33. Instead of complying, plaintiff "ripped her arm away from his grasp." Id. at 42-43. She tensed her body, balled both of her fists, and pulled away from Colborn.[4] Id. at 11-12, 26-27, 33. To regain control of Hammoud, defendant brought her to the ground, where she continued to resist his effort to arrest her by placing her hands under her chest. Id. at 11-12, 26-27, 33, 42-44. Both Sgt. Braun and defendant repeatedly told plaintiff to stop resisting. Id. Eventually, the two officers pulled plaintiff's hands out from underneath her, and Colborn was able to handcuff her. Id.

Even after plaintiff had been handcuffed, she continued to yell at Michael, Colborn, and other officers who had arrived at the scene. When Michael told her that he "tried to help" her, she yelled, "Shut your fucking mouth you fucking liar." [Dkt. No. 41-5] Video 1 at 0:43-0:50. And when responding to officers, plaintiff yelled, "I'll do what I want" and "I don't give a fuck." Id. at 1:22-1:30.

Colborn brought plaintiff to his patrol cruiser. When he attempted to secure plaintiff with a seatbelt, she told Colborn that "she was going to fucking bite [him] when [he] put the seatbelt on." [Dkt. Nos. 41-2, 48-2] at 12; [Dkt. No. 41-4]. In response, Colborn told Hammoud not to

---

[4] Plaintiff disputes that she turned away from Colborn but does not contest that she pulled away from him after he told her to place her hands behind her back. [Dkt. Nos. 48] at 5.

4

bite him and placed his left forearm against her face to prevent her from biting him as he put her seatbelt on. [Dkt. No. 41-4]. Plaintiff requested emergency aid because of alleged injuries, and shortly thereafter, emergency medical technicians arrived to examine her. [Dkt. Nos. 41-2, 48-2] at 12; [Dkt. No. 41-5] at Video 2. After medical technicians checked plaintiff and saw no "bleeding" or "swelling," she was taken to the Loudoun County Adult Detention Center. [Dkt. Nos. 41-2, 48-2] at 12, 45, 56-57; [Dkt. No. 41-5] Video 2 at 0:40-45; [Dkt. No. 41-4] Video 2. Plaintiff admitted in her deposition that she has no recollection of how defendant "took her to the ground" or how he secured plaintiff in the patrol cruiser. [Dkt. No. 41-1] at 25-26.

After being released from jail that same day, plaintiff drove to Loudoun Hospital, where she was further examined for injuries. [Dkt. Nos. 41-2, 48-2] at 56-57; [Dkt. No. 48-4]. Plaintiff was diagnosed with scrapes on her face, hands, and left knee as well as a bruise on her face. Id. at 1-15.

Hammoud was ultimately charged with, and found guilty of, public swearing/intoxication in violation of Va. Code § 18.2-388; obstructing justice/resisting arrest by threat/force in violation of Va. Code § 18.2-460; and fleeing from law enforcement in violation of Va. Code. § 18.2-479.1 in the Loudoun County General District Court.[5] [Dkt. No. 41-6]. Plaintiff appealed the dispositions to the Loudoun County Circuit Court. [Dkt. Nos. 41-7, 48-3]. The fleeing charge was amended to hindering under Loudoun County Ordinance 654.09, and her public swearing/intoxication charge was amended to public swearing/intoxication under Loudoun

---

[5] Plaintiff contests having been charged and found guilty of fleeing from law enforcement in violation of Va. Code. § 18.2-479.1, and to support this, plaintiff cites to the Loudon County General District Court's trial transcript; however, the trial transcript to which plaintiff cites is incomplete. [Dkt. No. 48] ¶¶ 43, 44, 46. Exhibit 6 of defendant's Motion for Summary Judgment provides copies of the Loudon County General District Court's online records, which show plaintiff was found guilty on November 1, 2018 of fleeing. [Dkt. No. 41-6] at 3.

County Ordinance 654.03. [Dkt. No. 41-7]. A nolle prosequi was entered for both charges. Id. The Circuit Court found plaintiff guilty of obstructing justice/resisting arrest by threat/force by way of her nolo contendere plea. Id.

B. **Procedural History**

On April 8, 2020, plaintiff filed this Complaint in the Loudoun County Circuit Court, alleging defendant violated her Fourth Amendment rights and state law by using excessive force, committing an assault, and intentionally inflicting emotional distress when arresting her. [Dkt. No. 1-1] at 3-6. On June 22, 2020, defendant timely removed the Complaint to this Court pursuant to 28 U.S.C. § 1446. [Dkt. No. 1] at 2.

On June 22, 2020, defendant filed an Answer, and a Partial Motion to Dismiss, arguing the Complaint's allegations did not support the state law claims of assault and intentional infliction of emotional distress. [Dkt. Nos. 3, 4]. On October 20, 2020, the Court dismissed plaintiff's assault and intentional infliction of emotional distress claims, leaving only the excessive force as the remaining claim in this civil action. [Dkt. No. 11].

On March 23, 2022, before discovery was completed, defendant filed a Motion for Summary Judgment, arguing that based on the undisputed facts, Hammoud could not show that he violated her Fourth Amendment rights. [Dkt. Nos. 12, 13]. Plaintiff filed a response to which defendant filed a reply. [Dkt. Nos. 18, 19]. On July 8, 2022, the Court denied defendant's Motion for Summary Judgment because plaintiff, proceeding pro se, had sufficiently alleged that patrol cruiser and body camera footage as well as independent testimony would prove that defendant used excessive force in arresting her. [Dkt. No. 20] at 3. The Court further found that

genuine disputes of material fact existed as to whether Colborn used excessive force given plaintiff and defendant's conflicting accounts. Id. at 4-5.[6]

After the parties engaged in and completed discovery, defendant filed the pending Renewed Motion for Summary Judgment and an appropriate Roseboro notice. [Dkt. Nos. 40, 42]. Plaintiff has responded to the motion. [Dkt. No. 48].

## II. DISCUSSION

Plaintiff alleges that defendant used excessive force in violation of the Fourth Amendment when he punched her "in the head and face so violently that it caused her head to bounce repeatedly off of the concrete sidewalk." [Dkt. No. 1-1] at ¶ 22. Defendant denies having punched plaintiff, arguing that he is entitled to judgment in his favor because he made a lawful arrest of plaintiff and used reasonable force to control her only after she resisted arrest. [Dkt. No. 41] at 9-12.

### A. Standard of Review

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). A genuine dispute about a material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012).

Under Federal Rule of Civil Procedure 56(c), "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

---

[6] This civil action was initially assigned to Judge Liam O'Grady and has been randomly reassigned to the undersigned judge following Judge O'Grady's retirement.

7

record. . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." The court must "draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion;" however, "those inferences must, in every case, fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. Nat'l Cable Advert., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995) (internal quotations and citations omitted).

### B. Excessive Force Claim

A district court assessing a claim of excessive force must inquire whether "the [defendant] officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them." Lombardo v. City of St. Louis, Mo., 141 S. Ct. 2239, 2241 (2021) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)) (internal quotations omitted). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). Factors relevant to the inquiry include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.

In analyzing defendant's use of force when arresting plaintiff, the factors discussed in Kingsley weigh in favor of defendant. As an initial matter, although plaintiff argues that defendant "wrongfully accused" her for being intoxicated, she does not dispute that defendant had probable cause to arrest her. [Dkt. No. 48] at 7. "An officer has probable cause for arrest if the facts known to him at the time would warrant the belief of a prudent person that the arrestee

8

had committed or was committing a crime." Figg v. Schroeder, 312 F.3d 625, 636 (4th Cir. 2002). In Virginia, the "odor of alcohol on a person's breath coupled with other circumstances," such as observably affected manner, disposition, speech, muscular movement, general appearance, or behavior, is "sufficient to support a finding of intoxication." McGhee v. Commonwealth, 280 Va. 620, 624 (2010); see Va. Code Ann. § 4.1-100 (West). Even if Colborn mistakenly believed plaintiff to be drunk at the time of the arrest, the evidence indicates that defendant had probable cause to arrest her because Michael told officers plaintiff was drunk, plaintiff told Colborn that she had drunk some wine, and Colborn independently observed plaintiff display signs of intoxication, including that he could smell alcohol on her person, and that she had bloodshot eyes, was unsteady on her feet, was unable to spell her own name, and suddenly changed moods. [Dkt. Nos. 41-2, 48-2] at 9-11, 23, 31-32; [Dkt. No. 41-1] at 18-19 (plaintiff describing her own demeanor as "definitely emotional").

Although defendant arrested Hammoud for a non-severe crime, the evidence shows that plaintiff both verbally and physically resisted being arrested. Anderson v. Rodriguez, 2016 WL 8732311, at *5 (E.D. Va. June 3, 2016) (concluding that although "public intoxication [is] not severe," a plaintiff's active resistance of arrest may warrant a reasonable use of force). When Colborn told plaintiff that she was under arrest, she said "no, you are not taking me to jail." [Dkt. No. 41-1] at 24. And when he told plaintiff to place her hands behind her back, she tensed her body, balled both of her fists and pulled away from him. [Dkt. Nos. 41-2, 48-2] at 11-12, 26-27, 33. Colborn brought plaintiff to the ground only after she pulled away from him, and once on the ground, she continued to ignore requests that she give officers her hands and stop resisting. It took two officers to wrestle plaintiff's arms out from under her and handcuff her. And after being handcuffed, plaintiff continued to act erratically towards officers, yelling, "I'll do what I want," "I don't give a fuck," and "You're confusing me fuckers." [Dkt. No. 48-5] at

1:22-1:30, 2:05-2:10. There is no evidence in the record indicating that Colborn swung at plaintiff, severely injured her, or used any weapon that could have caused her any substantial injury.

Plaintiff nevertheless argues that defendant punched her in the face while she was on the ground; however, she cites to no evidence to support this allegation, other than a medical record of an examination she received once she was released from jail. [Dkt. No. 48]; [Dkt. No. 48-4]. That record shows that plaintiff suffered from scrapes to her face, hands, and left knee as well as a bruise on her face, but those injuries are fully consistent with plaintiff having been wrestling on the ground with the officers. [Dkt. No. 48-4]. Plaintiff's argument that her injuries could not have come from anything but punches while she was on the ground, without more, amount to mere "speculation or conjecture." Thompson Everett, Inc., 57 F.3d at 1323; [Dkt. Nos. 41-1] at 28-29. In fact, the record shows that plaintiff admits she does not know whether defendant "punched, beat, banged, kneed, or kicked" her. [Dkt. No. 48] at 8. Sgt. Braun did not see defendant or anyone else punch plaintiff, and Colborn denied having punched her. [Dkt. Nos. 41-2, 48-2] at 26-27, 43-44. What the record does show is that any injury stemming from plaintiff's arrest, although unfortunate, resulted from her own resistance. See Pegg v. Herrnberger, 845 F.3d 112 (4th Cir. 2017) (finding an officer taking a resisting plaintiff to the ground to handcuff him when conducting a lawful arrest does not constitute excessive force, especially if the suspect suffered de minimis injuries); Redding v. Boulware, 501 Fed.Appx. 238, 241 (4th Cir. 2012) (concluding that any injury resulting from a plaintiff's resistance "was the result of [plaintiff] resisting arrest and refusing the officers' efforts to place [plaintiff] in handcuffs"); Geba v. Norris, 2016 WL 8730898, at *5 (E.D. Va. Apr. 4, 2016) (explaining that if plaintiff had still been actively evading arrest the officer would have been acting reasonably in tackling plaintiff).

As for defendant's use of force after handcuffing plaintiff, the patrol cruiser dash camera footage[7] shows Hammoud aggressively jerking and seemingly arguing as officers placed her in the patrol cruiser. [Dkt. No. 41-3] Video 1 at 0:55-2:12. The record further indicates that plaintiff threatened to bite Colborn when he attempted to secure her in the patrol cruiser, resulting in Colborn having to place his left forearm against plaintiff's face to protect himself and prevent plaintiff from biting him. [Dkt. No. 41-4] Video 1 at 0:00-0:14. Under these essentially uncontested facts, Colborn acted reasonably in response to plaintiff's verbal threat, the force lasted mere seconds, and plaintiff did not suffer any extensive injuries as a result. Kingsley, 576 U.S. at 397 (explaining relevant factors in determining reasonableness include, among others, whether plaintiff was actively resisting, the amount of force used, efforts to limit the amount of force, and the extent of plaintiff's injury). The uncontested evidence establishes that Colborn used reasonable force against Hammoud both before and after the arrest, and defendant is entitled to summary judgment.

## III. CONCLUSION

For the reasons stated above, the Court concludes that defendant is entitled to judgment in his favor with respect to plaintiff's claim that he used excessive force against her. Accordingly, defendant's Renewed Motion for Summary Judgment will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 25th day of August, 2023.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[7] The footage from the patrol dash camera does not include sound.